[Sac. No. 3218. In Bank.—October 3, 1921.]

J. P. MILLOTT et al., Appellants, v. ASSOCIATION OF MARE ISLAND EMPLOYEES (a Corporation), et· al., Respondents.

[1] CORPORATIONS — "EXCESS STOCK" — PURCHASE BY CORPORATION. Where in the articles of incorporation of a corporation formed by employees of one of the navy yards for the purpose of acquiring and operating a ferry in the interest of said employees, it is provided, among other things, that the sale and issuance of stock is with the object of keeping it, so far as permitted by law, in the hands of such employees and that the stock shall be sold upon the condition that the corporation may at any time call in each share of stock held by a stockholder in excess of ten shares by paying therefor the par value with interest at a certain rate, but there is nothing to distinguish the "excess stock" from other stock, this stock is not mere evidence of an indebtedness, or its holders simply creditors of the corporation, and the corporation cannot be compelled, when it has finished its work and is about to dissolve, to repurchase the so-called "excess stock," no reason appearing, appertaining to the conduct of the affairs of the corporation as a going concern, for the purchase of such stock.

APPEAL from a judgment of the Superior Court of Solano County. W. T. O'Donnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

L. G. Harrier and Theodore W. Chester for Appellants.

W. H. Morrissey and Frederick M. Shipper for Respondents.

ANGELLOTTI, C. J.—This is an appeal by plaintiffs from a judgment of the superior court, given upon sustaining a demurrer to the petition, denying an application for a writ of mandate requiring the corporation and its directors to repurchase from the funds of the corporation certain corporate stock styled ''excess stock,'' prior to a distribution of the assets of the corporation among the stockholders.

It appears from the petition that the corporation has sold all of its personal property and is preparing to dissolve, with the result that the money constituting its net assets will be distributed among the stockholders. Petitioners seek to compel purchase by the corporation from the assets before distribution of all the so-called ''excess stock'' for an amount per share specified in the by-laws, and the consequent extinction of such stock. The result would be that upon a division of the residue *pro rata* among the remaining stockholders, a larger amount would be received by them than if the distribution was made without such purchase, among all the stockholders, including those holding ''excess stock.''

The theory of petitioners is that under the articles of incorporation this ''excess stock'' is not ''stock'' in the real sense of the word, but that it in fact simply evidences a loan to the corporation which should be paid before distribution; and that in any event it is the duty of the corporation and its officers to purchase the same at the price fixed by the articles and by-laws.

The corporation was one formed by employees of the federal government at the Mare Island navy yard, its special object being to acquire and operate a ferry between the city of Vallejo and Mare Island in the interest of employees of such navy yard. The articles provided for the sale and issuance of the stock ''with the object of keeping'' it, so far as permitted by law, in the hands of employees of the yard, and ''under such proxy conditions as to voting same as will assure equal voice and vote to all the stockholders.'' One of the purposes was to operate such ferry ''at a transportation charge that will pay the expenses

of operating the ferry together with eight (8%) per cent per annum to all stockholders subscribing for stock in the corporation, and to create a fund to pay all money borrowed by the corporation and to purchase all the stock that any stockholder may have obtained or acquired in the corporation in excess of ten shares, the stock of the corporation to be sold and issued with the condition that the corporation may at any time call in and acquire each share of stock that any stockholder holds or has acquired in excess of ten shares by paying therefor the par value of each such share together with interest at the rate of eight (8%) per cent per annum on the par value of the stock from the date of its issue, provided that all interests theretofore paid on said stock shall be deducted from the interest to be paid by the corporation in the event of its purchasing such stock." It was provided that the capital stock shall be seventy-five thousand dollars divided into seventy-five thousand shares of the par value of one dollar each.

The term "excess stock," as used in these proceedings, refers to the stock that "any stockholder holds or has acquired in excess of ten shares." So far as the articles of incorporation are concerned, there is nothing to distinguish it from any other stock issued by the corporation, and the articles simply in effect provided that *all* stock should be sold subject to the condition that the corporation might call in, on payment of the specified price and interest, any stock held by a stockholder in excess of ten shares; in other words, that all stock should be sold subject to the condition that the corporation might, at any time, reduce any stockholder's holding to ten shares, by purchasing at the specified rates, the additional amount held by him. All was included in the seventy-five thousand shares of the par value of one dollar each.

Examination of the by-laws discloses nothing to indicate that any stock issued by the corporation was not to be considered as ordinary stock, or its holders other than ordinary stockholders. The holders of *all* stock were undoubtedly "stockholders" within the meaning of article II relative to the election of directors, and of article IV. All stock was to share in dividends under paragraph second of article V, whereby the directors were authorized to declare dividends out of the surplus profits, "when such profits shall, in the opinion

of the directors, warrant the same, and after all debts have been paid, and eight per cent (8%) interest to all stockholders." All stock issued was to be issued as ordinary stock, the only limitation as to issuance to one stockholder of more than ten shares being that in such event a power of attorney or proxy, designed to secure "equal voice and vote to all stockholders" be executed. (Par. 3, art. V and art. XIII.) All stock was to be transferred in the same way. (Art. XIV.) All stock issued was "subscribed stock" and its holders "stockholders" within the meaning of articles XV and XVI relative to meetings and voting. The contention of petitioners is necessarily based on certain other provisions to which we will now refer. By article XX it was provided that *all* stock was to be sold "subject to the right of the corporation to repurchase the same at any time upon paying" one dollar per share and interest, and to such other conditions as the board of directors may deem advisable, "except that no compulsory action shall be taken by the corporation that will reduce the ownership of stock to less than ten shares for each member." It is further declared in this article that this provision is "to the end that the business and affairs of the corporation shall be conducted, maintained, and carried on, in the interest of the majority of its stockholders," and that "the corporation shall repurchase, (the financial condition of the corporation permitting), first, such shares of stock owned and held by any stockholder in excess of ten shares, thereby limiting the ownership of stock to ten shares for each stockholder, and giving to each equal rights and privileges." It is then provided that "the corporation may at any time through its Board of Directors pursuant to the terms and conditions of sale and issuing of stock, repurchase the same whenever it is deemed for the best interests of the corporation and stockholders so to do." It is then provided: "To the end that the stockholders may have equal say and voice, it is deemed advisable that a form of proxy, agreement of sale, and power of attorney, be executed and required of each stockholder as a condition to be complied with before any stock in excess of ten shares may be purchased by any person." The form of this is set forth. By it the purchaser appoints some specified stockholder his agent and

attorney to represent him and vote said stock at all meetings while he remains owner of the stock, limiting the power of such attorney to vote "as the majority of the persons present as stockholders voting cast their votes," and agrees that if he revokes the power of attorney he will sell the stock for one dollar per share (its par value) to said agent, as of the date of revocation. It is further declared that this power of attorney and proxy is not to affect the right of the corporation to purchase said stock "at any time . . . by paying me" one dollar per share and interest.

In article XVII it is provided that no repeal or amendment to the by-laws shall affect the obligations of the corporation to pay eight per cent interest "to its stockholders, or any funds that it may borrow, or any security it may give for funds borrowed, or affect the obligation of the corporation to pay one dollar ($1.00) per share and interest at eight per cent (8%) to stockholders who have assisted the corporation by purchasing more than ten shares of stock to permit it to raise funds with which to purchase equipment of the ferryboats 'Vallejo,' 'Ellen,' equipment, etc.''

The corporation has during its existence repurchased from stockholders so-called excess stock of the value of approximately sixteen thousand dollars. It is in such financial condition that it can repurchase all such stock without detriment to claims of creditors. It sufficiently appears that it has closed the business for which it was incorporated, sold its property and is preparing to dissolve, and that the real burden of the complaint of petitioners, who with other stockholders presumably belong to "the ten share only" class, is that the value of their shares will be smaller on distribution of the assets, by reason of the existence of the so-called excess stock, than it would be if such stock were repurchased by the corporation before distribution at one dollar per share and interest. The corporation has finished its work, and no reason whatever *appertaining to the conduct of the affairs of the corporation as a going concern* exists for the purchase of any outstanding stock.

[1] There appears to us, in the light afforded by the articles of incorporation and the by-laws, no lawful foundation for a conclusion that this so-called "excess stock" is evidence of an indebtedness, or its holders simply creditors of the corporation. The object of the issuance of all the

stock was, of course, to secure money to buy property essential to the establishment and maintenance of the proposed business, but we had thought that such was always a purpose of the issuance of stock. Each person who acquired stock, whether ten shares only or more, became a stockholder in the corporation *with all the rights and liabilities of a stockholder as to all of the stock held by him* for so long as he continued to hold it, subject only in so far as any amount over ten shares was concerned to the right of the corporation, under the terms of the contract, to repurchase the same from him at its par value, with interest at eight per cent per annum. The provision for the payment of par value and interest was simply the fixing by the parties of a purchase price, in the event of the exercise of its option *by the corporation.* The provision in article XVII precluding repeal or amendment of the by-laws in certain particulars, in so far as material here, simply precludes any repeal or amendment of the provisions securing to the stockholder the designated price in the event of a repurchase by the corporation. The general guaranty of eight per cent interest on stock, whatever it means or may be worth, runs invariably, in so far as the by-laws are concerned, to *all* stockholders.

The remaining question is whether the corporation officers can be compelled to repurchase at the fixed price all stock held by any stockholder in excess of ten shares, under the existing circumstances. We may concede for the purposes of the decision the validity in all respects of the provisions of the by-laws relative to this matter. Careful consideration of articles and by-laws leaves no doubt as to the full purpose and scope of these provisions, the same being substantially stated therein. The object was to have the business of this corporation, which was to be confined as far as possible to employees of the Mare Island navy yard, run, in so far as was practicable, according to the desires of the majority of persons who were stockholders rather than according to the desires of the holders of the majority of stock. Equality of "say and voice" to every individual stockholder in the management of the business of the corporation as a going concern, regardless of the amount of stock held by him, was the sole object of all these provisions as to repurchase, as it was with regard to the provisions as to manner of voting, and requirement of proxy. There is to

our minds nothing in articles or by-laws to warrant a conclusion that for some purpose not at all incident to the management of the corporation as a going concern, in this case in the closing of the affairs of the corporation the mere increase in value of certain stock held by certain stockholders to be attained by extinguishing by purchase of their stock the rights of others to participate as stockholders in the distribution of the corporate assets, the corporation or its officers can compel a retransfer of any stock. As we have seen, this corporation has ceased to do business, has sold its property, and is about to dissolve, and apparently has a large residue of money to distribute *pro rata* among its stockholders. So far as the corporation is concerned and the management of its affairs, there is no longer any necessity for or propriety in the repurchase of any stock. The only thing remaining to be done is to dissolve and distribute the assets among the existing stockholders according to their respective holdings. We are satisfied that respondents are not acting in violation of articles of incorporation or by-laws in refusing at this stage to attempt a repurchase of any stock.

The judgment is affirmed.

Wilbur, J., Lennon, J., Sloane, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., and Sloane, J., who were absent.